UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD DASCHBACH, individually and on behalf of all similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>ADVANTAGE GOLD, LLC, an Illinois limited liability company,<br><br>Defendant. | Civil Action No.: 1:22-cv-03940<br><br>Judge Sara L. Ellis |

## JOINT STATUS REPORT

Plaintiff Richard Daschbach, individually and on behalf of all similarly situated individuals, and Defendant Advantage Gold, LLC, by and through their undersigned attorneys, hereby submit, pursuant to the Court's Minute Order from October 13, 2022, (Dkt. 14), the following Joint Status Report:

1. On September 22, 2022, the Parties submitted a Joint Initial Status Report where Defendant proposed bifurcation of discovery into two phases: (a) a liability phase, and (b) discovery related to class certification issues. (Dkt. 10). Plaintiff opposed bifurcation, requesting all fact discovery be handled in one phase. (*Id.*)

2. On September 27, 2022, pursuant to the Court's Standing Order on discovery disputes, the Parties filed a Joint Motion to Resolve the Dispute Regarding Bifurcation of Discovery (the "Joint Motion Regarding Bifurcation"). (Dkt. 11 ).

3. On September 29, 2022, the Parties appeared before the Court by telephone and presented their respective arguments on bifurcation. The Court instructed the Parties to exchange their records related to the telephone calls between Plaintiff and Defendant for the month of August

2021 and entered and continued the Joint Motion Regarding Bifurcation to October 13, 2022. (Dkt. 13).

4. On October 4, 2022, Plaintiff provided Defendant with the call records associated with his cellphone number listed in the Complaint (ending in -7110) for the month of August 2021. (*See* **Exhibit 1**, ("Plaintiff's Cellphone Records")).

5. On October 4, 2022, Defendant issued a subpoena for documents to its former calling provider, TPx Communications ("TPx"), requesting that TPx produce all of the call records related to the telephone calls between Defendant and the telephone numbers associated with Plaintiff, ending in -7710 and -2659. Defendant and TPx are currently working on obtaining the documents responsive to the subpoena.

6. On October 6, 2022, Defendant provided Plaintiff with its business records exported from its Customer Relationship Management (CRM) database containing the August 2021 call records associated with Plaintiff. (*See* **Exhibit 2**.)

7. On October 13, 2022, the Parties appeared before the Court by telephone. The Court entered and continued the motion for bifurcation to November 3, 2022, to allow the parties time to obtain and exchange the call records between Defendant and Plaintiff's two phone numbers.

8. On October 26, 2022, Plaintiff provided Defendant with a spreadsheet containing Plaintiff's August 2021 records for the landline phone number ending in -2659. (*See* **Exhibit 3** ("Plaintiff's Landline Records")).

***Defendant's Position***

Defendant incorporates by reference the arguments it made in the Joint Motion Regarding Bifurcation. (Dkt. 11). Plaintiff's Landline Records, which Plaintiff recently produced, show bifurcation is especially appropriate in this case. Plaintiff's records establish he used his landline to twice call Defendant on August 24, 2021, prior to any of the allegedly offending phone calls

identified in the Complaint. This created a prior existing relationship, such that Defendant's later alleged calls to Plaintiff did not violate the TCPA.

Specifically, Plaintiff's Landline Records show he used a second phone number—a landline ending in -2659 he did not identify in his Complaint—to make outgoing calls to Defendant. These calls occurred on August 24, 2021, prior to any of the alleged calls between Defendant and Plaintiff on his cell phone. Plaintiff's Landline Records show on August 21, 2021:

- Defendant (using the telephone number (323) 454-6879) called Plaintiff at **11:07:29**, and connected for one minute and 35 seconds (Ex. 3, "Terminating" tab, row 153);

- Plaintiff called Defendant back at **11:13:19** and appears to have hung up (*id.*, "Originating" tab, row 245);

- Plaintiff called Defendant again at **11:13:42** and again appears to have hung up (*id.*, "Originating" tab, row 246); and

- Defendant called Plaintiff at **11:37:12** and connected for 11 seconds (*id.*, "Terminating" tab, row 154).

Only thereafter, Defendant called Plaintiff's cell phone on August 24, 2021, at **12:37 p.m.** and at **1:22 p.m**. These calls lasted one minute and four minutes, respectively. (*See* Ex. 1 at p. 4).

The prior communications between Plaintiff and Defendant on Plaintiff's landline gave rise to an "existing business relationship" between the Parties that justified the subsequent calls placed by Defendant to Plaintiff's cellphone.[1] An existing business relationship means a "prior or existing relationship formed by a voluntary two-way communication between the company and the subscriber . . . on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call, or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the

---

[1] Defendant did not have Plaintiff's cell phone number in its CRM system until August 24, 2021; Defendant could have only obtained it if Plaintiff provided it to Defendant during a conversation at 11:37:12.

three months immediately preceding the date of the call, which relationship has not been previously terminated by either party." 47 C.F.R. § 64.1200(f)(5).

"The term 'business relationship' should be construed broadly." *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 451 (7th Cir. 2010). Indeed, the legislative history of TCPA shows Congress intends the relationship to be interpreted broadly and contemplated that it could be formed through an inquiry. *See, e.g.*, H. Rep. No. 102–317, at 14–15 (1991) ("[A]n 'established business relationship' [ ] could be based upon any prior transaction, negotiation, or inquiry between the called party and the business entity."). The FCC likewise interprets the term broadly. *See, e.g., In Re Rules & Reg. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14082–83, n. 382 (2003) ("[T]he EBR should not be limited by product or service. In today's market, many companies offer a wide variety of services and products. Restricting the EBR by product or service could interfere with companies' abilities to market them efficiently").

Here, the prior communications between Plaintiff and Defendant on Plaintiff's landline, including but not limited to the **11:07:29** connection for one minute and 35 seconds, followed by Plaintiff's two voluntary calls to Defendant at **11:13:19** and at **11:13:42**, and then again followed by an 11 seconds connection at **11:37:12** gave rise to an "existing business relationship" between the Parties that justified the subsequent calls placed by Defendant to Plaintiff's cellphone. Indeed, the totality and the sequence of the calls, including Plaintiff's two voluntarily calls to Defendant, qualify as a "voluntary two-way communication" for purposes of an EBR. *E.g., Johansen v. Nat. Gas & Elec.*, No. 2:17-cv-587, 2018 WL 3933472 (S.D. Ohio Aug. 16, 2018) (the plaintiff's relationship with the defendant "appear[ed] to fit within" the definition of an EBR because the plaintiff, after missing an initial phone call from the defendant, called back "to express interest in its services and ultimately completed the enrollment process to seemingly become one of its

4

electric customers."); *see Charvat v. Southard Corp.*, No. 2:18-CV-190, 2019 WL 13128407, at *5 (S.D. Ohio Sept. 30, 2019) (holding that an EBR could be formed based on an unsolicited call made by a telemarketer). Furthermore, because the records exchanged so far do not reveal the content of these communications (more precisely the connections of one minute and 35 seconds and of 11 seconds), Defendant needs limited further discovery on them to determine whether they included Plaintiff's inquiry or application about Defendant's products or services to form an EBR under Section 47 C.F.R. 64.1200(f)(5). Defendant expects to obtain this information from TPx and, potentially, the testimony by affidavit or deposition of its employee and Plaintiff.

In addition, Defendant did not possess Plaintiff's cell phone number in its CRM system until August 24, 2021; Defendant could only have obtained it from Plaintiff during a conversation at 11:37:12. Thus, Defendant's later calls were invited and permitted in light of the Parties' established business relationship. *See Nigro v. Mercantile Adjustment Bureau, LLC*, 769 F.3d 804, 806 (2d Cir. 2014) ("The 'business relationship' is sufficient consent because it supplies an inference of implied consent."); *Schneider v. Susquehanna Radio Corp.*, 581 S.E.2d 603, 607 (Ga Ct. App. 2003) (citing H.R. Rep. 102–317, 102d Cong., 1st Sess. (1991) at 14; *In Re Rules & Reg. Implementing the Tel. Consumer Prot. Act of 1991,* 7 F.C.C. Rcd. 8752 (1992) (based on congressional findings and an FCC interpretation "a solicitation to someone with whom a prior business relationship exists does not adversely affect subscriber privacy interests and such a solicitation can be deemed to be invited or permitted by a subscriber in light of the business relationship" and that "it is apparent that Congress did not intend to impose liability upon a telemarketer for calling an established customer at a number other than the one furnished by the customer . . .[when the client] could have terminated his participation in the discount program or requested that he be placed on a 'do-not-call' list had he wished to avoid calls at home.").

In his Complaint, Plaintiff omitted all of the information related to the earlier calls from his landline. In fact, the Complaint is devoid of any allegation related to the landline on which he had his first four calls with Defendant. (Dkt. 1). Instead, Plaintiff simply alleged he is "the primary and customary user of the cellular phone number ending in 7110," (Dkt. 1, ¶ 15), and that on August 24, 2021, Plaintiff received two unsolicited calls from Advantage Gold from the telephone number (323) 454-6879 (*id.*, ¶ 15). But, whether the communications between Plaintiff and Defendant on Plaintiff's landline gave rise to an existing prior relationship that justified the calls placed by Defendant to Plaintiff's cellphone should be easily determined early in discovery and, if true, would bar Plaintiff's cause of action against Defendant. 47 C.F.R. § 64.1200(f)(5); *CE Design*, 606 F.3d at 451 (affirming summary judgment for defendant on TCPA claim where parties' relationship fell within the scope of an established business relationship).

Thus, Defendant proposes just 45 days of additional bifurcated discovery concerning this argument, with the first phase of discovery limited to the viability of Plaintiff's individual claim in light of the existing business relationship defense and the second phase allowing discovery on all other relevant issues, including issues of class certification. (Dkt. 10). Such bifurcation will likely to result in significant judicial efficiency and provide the Parties large savings in time, attorneys' fees, and costs. Further, expert discovery will be unnecessary for the proposed first phase of discovery.

If Defendant is unable to establish that Plaintiff and Defendant had a prior existing business relationship, Plaintiff will only be nominally prejudiced by a short delay prior to the commencement of full-blown discovery.

Lastly, Plaintiff requests leave to amend his Complaint in his section of this Joint Status Report. If he wishes to seek such leave, he should do so by motion, after having consulted with

6

Defendant pursuant to Local Rule 37.2 and complied with the Court's standing order. *See* Fed. R. Civ. P.7(b)(1) ( "An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought.").

***Plaintiff's Position***

Changing its defense, Defendant now claims that Plaintiff's landline call records strongly suggest there was an established business relationship ("EBR") between the Parties such that the Court should frontload discovery related to the merits of Plaintiff's individual claim instead of proceeding with respect to all issues in the case. Defendant's newfound rational not only conflicts with its own prior representation, the phone records offer no basis for granting bifurcation. Rather, they reveal additional TCPA violations.

Initially, Advantage Gold claimed based on its internal CRM records that it placed <u>one</u> call to Plaintiff and left a voicemail message. Then, Advantage Gold claimed that Plaintiff placed a return call to it "***and requested information*** from Defendant on multiple occasions, including on August 24, 2021". (Dkt. 11, pg. 4 (emphasis added).) Advantage Gold was then ordered to produce its CRM notes, and it was revealed that Advantage Gold placed an initial call to Plaintiff, it went unanswered, and Advantage Gold left a voicemail message. (*See* Exhibit 2, row 6.) Later, on August 24, 2021, at 1:29 pm ET, the CRM notes claim that "Richard called in, Korinne was away from her desk". (*Id.*, row 4.) Then, the notes state: "**I called back** and he was making lunch. Wanted to know more about the "Loophole" and will talk next week. Couldn't get the WHY out of him other than he was just curious at this moment. Has RA but didn't want to get into detail about it." (*Id.* (emphasis added).). Hence, even if the Court were to accept Advantage Gold's version of events, any inquiry regarding products took place, at the earliest, on the second outbound call at 1:29 pm ET (i.e. after the TCPA violation took place). Added to this, Plaintiff produced his

7

cellular telephone records for the date in question, which revealed that Plaintiff received two (2) **incoming** calls from Advantage Gold: the first at 12:37 p.m. and the second was at 1:22 p.m. Because both of these calls were *prior* to the 1:29 pm call that Advantage Gold claimed formed the basis of its EBR defense, the EBR is tenuous at best and the Court should refuse to prioritize it on the schedule ahead of all other issues in the lawsuit.

Realizing that its CRM notes do not support its original version of events, Advantage Gold set out to subpoena Plaintiff's landline call records.[2] On October 26, 2022, Plaintiff provided Advantage Gold with a copy of his landline records—none of which support Advantage Gold's EBR defense either. Rather, Plaintiff's phone records show the following calls:

- Defendant called Plaintiff's landline at 11:07:29, the call lasted for one minute and 35 seconds (Exhibit 3, "Terminating" tab, row 155)—it is unclear whether this call was answered or whether it was a voicemail message;

- Plaintiff called Defendant back at 11:13:19 and 11:13:42 (*id.*, "Originating" tab, row 243-244)—both calls went unanswered and the time connected is recorded as "0:00:00" (*id.*);

- Defendant then called Plaintiff's landline at 11:37:12 and connected for 11 seconds (*id.*, "Terminating" tab, row 157).

Now, Advantage Gold, absent any explanation regarding the content of the calls, claims that these calls must have formed the basis for an EBR. But an EBR is not a term that is open to various interpretations. Rather, the TCPA defines an EBR as follows:

> The term established business relationship for purposes of telephone solicitations means a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call **or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity** within the three

---

[2] Advantage Gold takes issue with Plaintiff's failure to allege any details regarding the calls placed to his landline telephone. Yet, Plaintiff contacted Advantage Gold in September 2021 to inquire regarding its source of consent, the calls placed to Plaintiff, and related matters. Advantage Gold never provided any information regarding the calls placed to his landline telephone.

months immediately preceding the date of the call, which relationship has not been previously terminated by either party.

47 C.F.R. 64.1200(f)(5) (emphasis added). Additionally, a "seller or telemarketer using the EBR as the basis for a telemarketing call must be able to demonstrate, with **clear and convincing evidence**, that they have an EBR with the called party." *Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 68 FR 44144-01 (emphasis added).

Given that Plaintiff did not purchase a product or service from Advantage Gold within the 18 months immediately preceding the calls (or at any other time) the only possible scenario that could form an EBR is a subscriber inquiry. But returning a call to Advantage Gold is insufficient to establish an EBR (especially where, as here, the calls went unanswered). Rather, a consumer must make an inquiry "about [a defendant's] products or services." *Charvat v. Southard Corp.*, No. 2:18-CV-190, 2019 WL 13128407, at *4 (S.D. Ohio Sept. 30, 2019). "'An inquiry regarding a business's hours or location,' for example, would not establish an EBR." *Id.* (citing 68 Fed. Reg. 44,144).

Here, Advantage Gold has provided no evidence, let alone clear and convincing evidence, that Daschbach inquired regarding a product or service. Instead, it generally asserts that the landline records support its request to bifurcate. But calls alone are insufficient to establish an EBR. *See Charvat*, 2019 WL 13128407, at *4-5. Moreover, records and testimony from Advantage Gold are highly suspect: its CRM notes relating to the calls place to Plaintiff don't align with either the cellphone or landline records.

And while Advantage Gold claims that it "needs limited further discovery on them to determine whether they included Plaintiff's inquiry or application about Defendant's products or services to form an EBR", the reality is that any additional discovery would likely conflict with Advantage Gold's prior representations regarding the content calls (i.e. the CRM notes). In the

9

end, there would still be a genuine dispute of material fact. Where bifurcation will only delay, as opposed to resolve, an issue, the Court should decline to bifurcate. *See Abramson v. Gohealth LLC*, No. 19 C 6318, 2020 WL 5209817, at *2-3 (N.D. Ill. Sept. 1, 2020) (denying a motion to bifurcate in a TCPA case). Put simply, there is no basis to find that an EBR had been formed prior to the TCPA violation in this case such that class discovery should be delayed.

While the records do not reveal an EBR, they do provide a basis for Plaintiff to amend his complaint.[3] Fed. R. Civ. P. 15(a)(2) "provides that leave to amend shall be freely granted when justice so requires." *Leato v. Dart*, No. 14 CV 454, 2016 WL 890741, at *2 (N.D. Ill. Mar. 9, 2016). "Leave to amend should be denied only 'if it is clear that any amendment would be futile.'" *Id.* (citing *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013)). "An amendment is futile 'when it fails to state a valid theory of liability or could not withstand a motion to dismiss.'" *Id.*

Here, the Comcast landline records reveal that Advantage Gold placed numerous additional calls in violation of the TCPA. Indeed, Plaintiff's landline telephone number is also registered on the DNC Registry. In addition to the unlawful calls placed to his cellphone, the phone records reveal that Advantage Gold placed numerous telephone solicitations to his landline absent any prior express invitation, permission, or consent. As such, Plaintiff respectfully requests leave to file an amended complaint to include the additional violations in his complaint.

Respectfully submitted,

| | |
|---|---|
| /s/ Ian H. Fisher | /s/ Taylor T. Smith |
| Ian H. Fisher | Steven L. Woodrow |
| ifisher@taftlaw.com | swoodrow@woodrowpeluso.com |

---

[3] In response to Plaintiff's request to amend his complaint, Advantage Gold takes the position that Plaintiff should file a separate motion seeking leave to amend. Should the Court desire a separate motion, Plaintiff can certainly file one. However, Plaintiff requests leave here to eliminate the necessity for the Court to review additional briefing regarding a straightforward request to amend.

| | |
|---|---|
| Ioana M. Guset<br>iguset@taftlaw.com<br>Taft Stettinius & Hollister<br>111 E. Wacker Dr., Suite 2800<br>Chicago, Illinois 60601<br>312-527-4000<br><br>*Attorneys for Defendant* | Patrick H. Peluso<br>ppeluso@woodrowpeluso.com<br>Taylor T. Smith<br>tsmith@woodrowpeluso.com<br>Woodrow & Peluso, LLC<br>3900 E. Mexico Avenue, Suite 300<br>Denver, Colorado 80210<br>Tel: 720-907-7628<br>Fax: 303-927-0809<br><br>*Attorneys for Plaintiff and the Class* |

75068624v9